# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1918 | **DATE** | March 28, 2002 |
| **CASE TITLE** | eOnline v. Chicago Consulting Partners, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion to Dismiss Counts I, II and V of CCP's Counterclaims; Plaintiff's Motion for a more definite statement on Count II; Plaintiff's Motion to Dismiss Miller's Counterclaim and Strike Affirmative Defenses

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] eOnline's motion to dismiss CCP's Counterclaim (doc. #9) is **DENIED** as to Counts II and V, and **GRANTED** in part and **DENIED** in part as to Count I; the motion for a more definite statement on Count II (doc. #10) is **DENIED**; the motion to dismiss Miller's counterclaim (doc. #11-1) is **GRANTED** in part and **DENIED** in part; and the motion to strike Miller's affirmative defenses (doc. #11-2) is **DENIED** as moot. Plaintiff/Counter-Defendant eOnline is directed to file its Answers to the Counterclaims of CCP and Miller within 21 days. Status hearing set for April 22, 2002, at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | MAR 29 2002 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | 34 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| ✓ | Copy to judge/magistrate judge. | | | | |
| JHC | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

eONLINE,
    Plaintiff/Counter-Defendant,

v.

CHICAGO CONSULTING PARTNERS and
ALAN MILLER,
    Defendants/Counter-Plaintiffs.

**DOCKETED**

MAR 2 9 2002

CASE NO. 01 C 1918

JUDGE WILLIAM J. HIBBLER

## MEMORANDUM OPINION AND ORDER

Plaintiff eOnline filed this diversity action against Defendants Chicago Consulting Partners ("CCP") and its officer/director/shareholder, Alan Miller ("Miller"), to recover on a $3.15 million note to CCP, $2.25 million of which Miller personally guaranteed. In response, CCP filed a five-count counterclaim alleging fraudulent inducement (Count I), breach of the purchase agreement (Count II), breach of an agreement to provide services (Count III), unjust enrichment (Count IV), and breach of the mutual non-disclosure agreement (Count V), while Miller countersued for fraudulent inducement only. Pending before the Court are eOnline's motions to dismiss Counts I, II and V of CCP's Counterclaim (doc. #9), to obtain a more definite statement concerning Count II of CCP's Counterclaim (doc. #10), and to dismiss Miller's counterclaim and strike his affirmative defenses (doc. #11). For the following reasons, the motion to dismiss CCP's Counterclaim is **DENIED** as to Counts II and V, and **GRANTED** in part and **DENIED** in part as to Count I; the motion for a more definite statement on Count II is **DENIED**; the motion to dismiss Miller's counterclaim is **DENIED** in part and **GRANTED** in part, and the motion to strike is **DENIED** as moot.

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the Court must view the complaint's allegations in the light most favorable to the plaintiff. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). All well-pleaded facts and allegations are taken as true, and plaintiff is entitled to every reasonable inference that can be drawn

3ᒃ

from the complaint. *Id.* Indeed, dismissal is not warranted "unless it is impossible to prevail 'under any set of facts that could be proved consistent with the allegations.'" *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) citing *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Furthermore, a complaint is not required to allege all, or any of the facts entailed by the claim, *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (citation omitted), except where Plaintiff alleges fraud. In that case, the underlying circumstances must be plead with particularity. Fed. R. Civ. P. 9(b); *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). With those principles in mind, the Court turns to Defendants' Counterclaims and the allegations contained therein.

## BACKGROUND

CCP is a consulting group that primarily focuses on Ariba-based consulting services; eOnline provides e-business solutions. Sometime in May 2000, eOnline and CCP began discussing a possible merger of their companies. Specifically, eOnline sought to acquire the capital stock of CCP, thereby merging CCP into eOnline. Representatives from eOnline and CCP met on June 8, 2000 in California (at eOnline's offices) to start working out the terms of the deal. At that meeting, Adrian Ionel ("Ionel"), eOnline's CEO, President and Chairman of the Board, represented that eOnline had the following total contract value ("TCV") for the year 2000: first quarter - $14 million; second quarter - $28 million; third quarter - $60 million; fourth quarter - $80 million; and calendar year - $180 million. TCV is the amount of revenue committed to eOnline as a result of eOnline having entered into specific contracts with customers. Ionel also represented that eOnline would loan CCP in excess of $2 million to pay off a preexisting loan and thereby eliminate a possible preferred stockholder. Furthermore Ionel stated that upon consummation of the merger, all loans by eOnline to CCP would be fully and completely assumed by eOnline.

CCP and eOnline representatives met again on June 13, 2000, and Ionel reiterated his earlier statements about eOnline's TCV for 2000. The parties then entered into a letter of intent ("LOI") setting forth their desire to merge CCP and eOnline, as well as a Mutual Non-Disclosure Agreement ("NDA") that, among other things, limited each party's ability to solicit employees from the other for a two year period. Shortly thereafter, on June 20, 2000, CCP borrowed $2 million from eOnline. On June 22, 2000, Miller

personally guaranteed up to $2.25 million of loans taken by CCP.

In July 2000, Ionel and Vern Snider, eOnline's Executive Vice President of Corporate Development, told CCP representatives Snider was experienced with mergers, acquisitions, and related fairness hearings before the California Commissioner of Corporations, and then represented that the merger would close by July 31, 2000. Consequently, Ionel directed CCP to transfer its Ariba Gold Sponsorship for an Ariba conference to be held in September 2000 to eOnline. Believing the merger was imminent, CCP complied. CCP also borrowed an additional $250,000 from eOnline.

Contrary to Snider's statement, the merger did not take place by the end of July. CCP obtained loans of $250,000 from eOnline in August and September 2000. On September 8, 2000, CCP and eOnline entered into a Purchase Agreeement which provides, significantly, that the merger is conditioned upon the approval of at least 95% of eOnline's common stockholders. Shortly thereafter, Ionel reaffirmed the TCV forecast and gave CCP a document entitled "Revenue Commit," which identified Office Max and Mitsubishi as having committed to eOnline for over $70 million in revenues for the third quarter of 2000.

The merger appeared to be a done deal, until September 17, 2000, when several CCP representatives attending the Ariba conference noticed Ionel drinking excessively, acting belligerently, and making unwanted sexual advances to female CCP employees. Upon further investigation, CCP learned this was not the first time Ionel had acted in an unprofessional and offensive manner. Consequently, CCP shareholders who had observed Ionel's antics began to question his ability to function as the leader of the merged company. Notwithstanding those concerns, though, on September 25, 2000, CCP borrowed an additional $400,000 from eOnline.

In early October 2000, CCP discovered eOnline's third quarter TCV was actually between $8 and $12 million, and not the $60 million Ionel had been projecting. During that time, eOnline also began soliciting, and ultimately hired, an eOnline employee. The deal finally fell apart in late October 2000 when CCP's shareholders rejected the proposed merger with eOnline, allegedly because of eOnline's misrepresentations about its financial performance and Ionel's conduct.

After the merger that would have extinguished the debt owed by CCP and guaranteed by Miller did not occur, eOnline filed suit, seeking $3.15 million from CCP on the note and/or $2.25 million from Miller

as the guarantor. CCP and Miller counterclaimed, asserting a host of claims. eOnline now moves this Court to dismiss a portion of CCP's counterclaim and Miller's entire counterclaim.

## ANALYSIS

### I. eOnline's Motion to Dismiss Counts I, II, and V of CCP's Counterclaim

#### A. Fraudulent Misrepresentation (Count I)[1]

In Count I of its Counterclaim, CCP alleges that eOnline's affirmative misrepresentations, regarding eOnline's financial performance, as to the timing of the merger, and in the Purchase Agreement, as well as eOnline's material omissions of Ionel's history of inappropriate behavior, all induced CCP to pursue the merger with and borrow funds from eOnline. To state a claim for common law fraud, CCP must allege: (1) a false statement of material fact; (2) known or believed to be false by the party stating it; (3) intent to induce the other party to act; (4) action in reliance by the other party; and (5) damages to the other party resulting from such reliance. *See Connick v. v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496, 675 N.E.2d 584, 591 (1996). In addition to alleging these elements, CCP must also satisfy Fed. R. Civ. P. 9(b), which requires that "the circumstances constituting fraud or mistake . . . be stated with particularity." CCP therefore must also specifically identify "what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Connick*, 174 Ill.2d at 497; 675 N.E.2d at 591. eOnline challenges the four alleged misrepresentations/omissions that form the basis of CCP's fraud claim on various grounds.

#### eOnline's Financial Performance

eOnline maintains the TCV projections are statements of opinion, not fact, and therefore not actionable as fraud. Under Illinois law, recovery is generally permitted for misrepresentations concerning past or existing events, but barred for fraud based on promises relating to future events. *Peterson v. Baloun*,

---

[1]The parties dispute whether Illinois law or California law guides this Court's analysis of CCP's fraudulent inducement claim. A district court exercising jurisdiction in a diversity action applies the choice of law rules of the state in which it sits. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1939). Illinois has adopted the Restatement (Second) of Conflicts of Law which requires courts to employ "the substantive law of the state with the most significant relationship to the tort at issue." *Suzik v. Sea-Land Corp.*, 89 F.3d 345, 348 (7th Cir. 1996). Since eOnline and CCP allege in their respective Complaint and Counterclaim that a substantial part of the events giving rise to their claims occurred in Illinois, (*see* Compl. at ¶5, Countercl. at ¶4), this Court concludes that Illinois law should apply.

-4-

715 F. Supp. 212, 216 (N.D. Ill. 1989). However, an exception to the general rule comes into play when the promise relating to the future event is used to perpetrate the fraud. *Id.* (refusing to dismiss a fraud claim where defendant's statements regarding expected profits were used to induce plaintiffs to invest). Here, Ionel, eOnline's President and Chairman of the Board, allegedly provided CCP with TCV projections in order to induce CCP to pursue the merger. Thus, CCP can proceed with its fraud claim on the theory that Ionel made statements concerning future profits that perpetrated the fraud. *See, e.g., Continental Bank, N.A., v. Meyer*, 10 F.3d 1293, 1299 (7th Cir. 1993).

Furthermore, this Court agrees with CCP that the very definition of TCV, i.e., committed revenues based on specific contracts already entered into, belies eOnline's argument that the figures consistently presented to CCP by Ionel were tentative projections. Indeed, Ionel's representations as to eOnline's TCV for the year 2000 carried an implied assertion that he knew facts which would justify the opinion. *Heider v. Leewards Creative Crafts, Inc.*, 245 Ill. App. 3d 258, 267, 613 N.E.2d 805, 811-12 (2d Dist. 1993). In fact, in September 2000, Ionel affirmatively stated eOnline had contracts with two companies that would generate revenue in excess of $70 million for the third quarter of 2000. However, CCP alleges in its Counterclaim that, according to a former eOnline executive, Ionel knew those companies had not committed to eOnline, and thus his representations were false. This Court therefore finds the allegedly false statements of financial performance are sufficient to state a cause of action for fraud.

### Timing of the Closing

CCP alleges it was induced by eOnline's representation that the merger would close by July 31, 2000 to transfer its Ariba Gold Sponsorship. As an initial matter, CCP does not have to allege, as eOnline claims, that at the time the statement was made eOnline had reason to believe the merger would not close by the end of July. Rather, CCP need only allege, as it did here, that eOnline made the representation with intent to deceive and induce CCP to act. eOnline also contends CCP cannot demonstrate justifiable reliance since CCP is a sophisticated business that had the ability to make its own assessment as to the likelihood that the closing would in fact take place by the end of July.

In deciding whether reliance is justified, this Court considers "all of the facts that [CCP] knew, as well as those facts [CCP] could have learned through the exercise of ordinary prudence." *Cozzi Iron &*

*Metal, Inc. v. U.S. Office Equip. Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). In short, CCP cannot close its eyes to an obvious risk and then claim fraud. *Ampat/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1042 (7th Cir. 1990). However, the facts do not suggest that CCP is playing ostrich here. eOnline held Snider out as someone knowledgeable about mergers, acquisitions, and related fairness hearings before the California Commissioner of Corporations. Thus it was not unreasonable for CCP to rely on Snider's assessment of when the merger would close. *See id.* ("the victim of a fraud is not obliged to dig beneath apparently adequate assurances"). Consequently, justifiable reliance has been sufficiently pled.

## Ionel's Misconduct

CCP alleges eOnline fraudulently concealed Ionel's inappropriate and unprofessional behavior. eOnline claims CCP cannot establish the elements of a fraudulent concealment claim because the personal conduct of Ionel is not a material fact, CCP could have discovered the truth on its own, and CCP has not shown they would have acted differently had they known about Ionel. *See Neptuno v. Arbor*, 295 Ill. App. 3d 567, 572, 692 N.E.2d 812, 816-17 (1st Dist. 1998). The threshold question in a fraudulent concealment case is whether the other party has a duty to speak. A duty to disclose can arise when the defendant owes the plaintiff some fiduciary duty to make full and fair disclosure but fails to correct a misapprehension of a material fact. *Lefebvre Integraphics, Inc., v. Sanden Machine Limited*, 946 F.Supp. 1358, 1366 (N.D. Ill. 1996). The burden of proving that a fiduciary relationship exists lies with the party seeking relief. *Neptuno,,* 295 Ill. App. 3d at 573, 692 N.E.2d at 817.

CCP and eOnline did have a legal relationship in that they were planning on merging their two companies together. However, each party only had the duty to disclose material facts. A material fact is one that relates to a matter upon which plaintiff could be expected to rely in determining whether to engage in the conduct in question. *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 161, 510 N.E.2d 409, 414 (1st Dist. 1986). Given this era of frequent litigation arising out of sexual harassment claims, the Court can certainly see how Ionel's pattern of inappropriate behavior would be material, since companies obviously want to limit their exposure to liability. But in this case, it is clear Ionel's personal behavior did not influence CCP's decision to pursue the merger, because even after observing Ionel's disturbing actions, and discovering it was not the first time he had acted in such a manner, the very next week, CCP borrowed

an additional $400,000 from eOnline, in anticipation that the merger would occur and the debt would be extinguished. Thus even after CCP was aware of this particular fact, it did not act differently. As such, CCP's claim for fraudulent concealment of Ionel's misconduct cannot be sustained.

### Purchase Agreement

Finally, CCP alleges eOnline made material misrepresentations in the Purchase Agreement. However, the who, what, where, and when of the alleged fraud, is not identified in the Counterclaim. *See Ackerman v. Northwestern Mutual Life Insurance Company*, 172 F.3d 467, 469 (7th Cir. 1999). Instead, CCP points to clauses in the Purchase Agreement in which eOnline generally represented that all documents provided, including the financial projections, contained truthful statements, without identifying the alleged falsehoods. This Court therefore agrees with eOnline that CCP has not plead the elements of its misrepresentation claim with particularity as required by Rule 9(b). The resultant effect is that CCP has failed to give adequate notice of the specific activity constituting the fraud so that eOnline may then file an effective responsive pleading. *Lachmund v. ADM Investor Svcs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). Consequently, this Court finds CCP's fraud allegations concerning the Purchase Agreement do not satisfy Rule 9(b).

### B. Breach of Purchase Agreement (Count II)

### Failure to State a Claim

In Count II of its Counterclaim, CCP alleges eOnline breached certain provisions of the Purchase Agreement. eOnline argues that CCP failed to provide notice of the alleged breach; therefore, pursuant to Section 11.2 of the Purchase Agreement, eOnline's liabilities have been extinguished. The Purchase Agreement expressly provides that California law governs its interpretation. California law adheres to the basic contract principle that "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; " CAL. CIV. CODE § 1639.

Section 9.2(f) of the contract identifies the approval of 95% of CCP's common shareholders as a condition precedent to the merger. However, in late October 2000, more than 5% of the shareholders voted against the agreement. Once the proper approval was not secured, CCP could have, pursuant to Section 11.1(c) of the Purchase Agreement, given eOnline written notice that it was terminating the contract due to

the failure of a condition precedent. Had it acted in that manner, according to Section 11.2 of the contract, all rights and obligations of the parties would have terminated as well. However, the facts alleged here, contrary to eOnline's assertions, do not show CCP expressly terminated the Purchase Agreement. Thus, it is not clear Section 11.2 has been triggered. But even if it has been, liability is not extinguished for a party then in breach of the contract. CCP therefore can proceed against eOnline on its breach claim.

### More Definite Statement

Alternatively, eOnline claims CCP's breach allegations are so vague that it cannot reasonably answer the Counterclaim. Motions for a more definite statement pursuant to Fed. R. Civ. P. 12(e) are generally disfavored. *555 M Mfg., Inc. v. Calvin Klein, Inc.*, 13 F. Supp. 2d 719, 724 (N.D. Ill. 1998). CCP's contract claim adequately recites the relevant agreement, the basic contents of the agreement and the pertinent parties. *See id.* Consequently, this Court will only require a more definite statement if eOnline demonstrates that the Counterclaim allegations leave it guessing as to what conduct and what contract are referred to. *Id.*

CCP alleges in the Counterclaim three examples of how eOnline breached the Purchase Agreement: (1) by delivering documents containing untrue statements of material facts; (2) by providing unreasonable financial projections; and (3) by failing to provide prompt written notice of changed circumstances affecting its earlier representations and warranties. While it is true that these particular allegations do not provide much detail as to the underlying basis for the breach claim, CCP does incorporate in Count II the prior 45 paragraphs of the Counterclaim in which CCP sets forth in detail the alleged misrepresentations/omissions made by eOnline. In that CCP's claim of breach relates to the truthfulness of the information provided by eOnline, this Court is not persuaded that eOnline is unable to ascertain from the Counterclaim the conduct about which CCP now complains. Accordingly, a more definite statement is not warranted.

### C. Breach of Non-Disclosure Agreement (Count V)

In Count V of its Counterclaim, CCP alleges eOnline breached their mutual NDA by soliciting and hiring one of its employees in October 2000, well before the two year agreement expired. eOnline contends CCP's request for replacement damages (i.e., the expenses associated with finding someone else to fill that spot) does not fall within the scope of the NDA. That argument is disingenuous, however, since the Counterclaim clearly states damages requested are not limited solely to those incurred as a result of having

been deprived of that employee's services.

Next, eOnline maintains CCP's attempt to enforce the NDA is contrary to Section 16600 of the California Business and Professions Code[2] which states that ". . . every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." But §16600 has been interpreted to prohibit contracts restraining one from pursuing an entire business, trade or profession, not those that bar pursuit of only a small or limited part of the business, trade or profession. *See Gen. Commercial Packaging, Inc. v. TPS Package Eng'g Inc.*, 126 F.3d 1131, 1132 (9th Cir. 1997) (per curiam). In determining if the "narrow restraint exception" applies, this Court must decide whether the agreement restricts a substantial segment of the market. *Latona v. Aetna U.S. Healthcare Inc.*, 82 F. Supp. 2d 1089, 1094 (C.D. Cal. 1999). In this case, the NDA restricts the ability of two companies to solicit each other's employees for a period of two years. Because the NDA imposes fairly narrow restraints, it does not run afoul of § 16600. Therefore, CCP states a claim for breach of the NDA.

## II. eOnline's Motion to Dismiss Miller's Counterclaim

In his Counterclaim, Miller alleges fraudulent inducement based upon the same misrepresentations and omissions cited by CCP in Count I of its Counterclaim. eOnline argues Miller's counterclaim must be dismissed because he lacks standing, and because he, like CCP, has not stated a claim for fraud.

eOnline contends Miller does not have standing to bring this cause of action because guarantors cannot sue for injuries to a corporation. In an analogous situation, the general rule is that shareholders cannot bring a lawsuit arising out of injury to the corporation. *Mann v. Kemper Fin. Cos, Inc.*, 247 Ill. App. 3d 966, 973, 618 N.E.2d 317, 323 (1st Dist. 1992). However, those individuals with a "direct and personal interest in the cause" may still sue even if the corporation's rights are also implicated. *Id.* A personal cause of action is valid if it resulted in direct harm, not derivative harm, regardless of whether the corporate cause of action and the personal cause of action result from the same wrongful acts. *Buschmann v. Professional Men's Association*, 405 F.2d 659, 663 (7th Cir. 1969). Therefore, "fraudulent representations made for the purpose of inducing shareholders to agree to the sale of the assets, and made directly to shareholders by the corporation, [are] proper allegations of individual shareholder injury." *Mann*, 618 N.E.2d at 324.

---

[2]The NDA provides that California law governs its interpretation.

Miller contends eOnline represented it was a financially profitable company, and that upon consummation of the merger, CCP's liabilities (and therefore Miller's) would be extinguished, in order to induce Miller to sign the personal guaranty for the loans. Miller will suffer a direct injury if he is held personally liable for $2.25 million of the loans. Accordingly, he has standing to proceed on his individual counterclaim. Furthermore, to the extent eOnline challenges the substance of Miller's fraud claim, the same analysis the Court set forth above in connection with CCP's fraud claim, equally applies. Finally, in light of this Court's determination that Miller can go forward on his fraud claim, eOnline's motion to strike his affirmative defenses is denied as moot.

## CONCLUSION

Accordingly, the Court grants in part and denies in part eOnline's motions to dismiss the Counterclaims of CCP and Miller, denies eOnline's motion for a more definite statement, and denies as moot eOnline's motion to strike Miller's affirmative defenses.

**IT IS SO ORDERED.**

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE

**DATED:** March 28, 2002